048277/21061/JNR/AR

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

HANNAH MCCAFFREY,

          Plaintiff,

v.

JASON, MCATEE, MARY SCHOEN, DINA
ELDRIDGE, ALYSSA, LISA JOHNSON,
WEXFORD HEALTH SOURCES, INC.,
UNKNOWN WEXFORD EMPLOYEES, and
UNKNOWN IDOC EMPLOYEES,

          Defendants.

No. 21-cv-3029

Chief Judge Sara Darrow

Magistrate Judge Jonathan E. Hawley

### ANSWER TO PLAINTIFF'S COMPLAINT WITH AFFIRMATIVE DEFENSES

NOW COME the Defendants, WEXFORD HEALTH SOURCES, INC., MARY SCHOEN, DINA ELDRIDGE, ALYSSA BAUER, and JASON MCATEE, by their attorney, CASSIDAY SCHADE LLP, and hereby submit their Answer and Affirmative Defenses to Plaintiff's Complaint, stating as follows:

#### Introduction

1.    In the hours before Plaintiff Hannah McCaffrey gave birth, prison medical staff ignored her repeated pleas and obvious signs of labor, dismissing her requests for care and physical condition as the product of "anxiety" and "ineffective coping." As a result, Ms. McCaffrey languished for hours in labor with no medical care or pain medication, ultimately delivering her baby, not in the hospital or even the prison health care unit, but instead on the filthy floor of the prison shower room, without any medical provider.

ANSWER:  Defendants admit Plaintiff gave birth to a child at Logan Correctional Center, but deny the remaining allegations set forth in Paragraph 1.

2.      Both Ms. McCaffrey's labor and her childbirth were difficult and extremely painful. Indeed, following the birth of her daughter, Ms. McCaffrey required surgery to repair lacerations in her vagina. These types of childbirth are precisely the sort that require close medical attention and care, care that Ms. McCaffrey was denied by Defendants' callous indifference to the health and safety of Ms. McCaffrey and her daughter.

ANSWER:  Defendants lack sufficient knowledge to admit or deny whether Plaintiff's labor and childbirth were difficult and extremely painful.  Defendants lack sufficient knowledge to admit or deny the specifics of Plaintiff's post-birth medical care absent review of the full medical records which are not currently in Defendants' possession.  Defendants deny the remaining allegations set forth in Paragraph 2.

3.      Ms. McCaffrey brings this civil rights lawsuit to seek redress for the extreme physical and emotional pain she suffered as a result of Defendants' violation of her constitutional rights and rights under Illinois law.

ANSWER:  Defendants deny the allegations set forth in Paragraph 3.  Defendants deny Plaintiff is entitled to any relief whatsoever.

**Jurisdiction and Venue**

4.      This court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because Ms. McCaffrey brings this action under 42 U.S.C. § 1983 to remedy violations of her constitutional rights.

ANSWER:  Defendants admit that subject matter jurisdiction exists. Defendants deny Plaintiff is entitled to any relief whatsoever.

5.      This court has supplemental jurisdiction over Ms. McCaffrey's Illinois tort claims pursuant to 28 U.S.C. § 1367(a).

ANSWER:  Defendants admit subject matter jurisdiction exists.

6.      Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(1) and (2), as the events giving rise to this lawsuit occurred in this judicial district. In addition, on information and belief, defendants all reside in Illinois and at least one defendant resides in this judicial district.

ANSWER:  Defendants admit that venue is proper in the Central District of Illinois.

## Parties

7.      Plaintiff Hannah McCaffrey is a resident of Chicago, Illinois. During the events giving rise to this complaint, Ms. McCaffrey was incarcerated at Logan Correctional Center located at 1096 1350th Street in Lincoln, Illinois ("Logan").

ANSWER:  Defendants lack sufficient knowledge to admit or deny Plaintiff's current place of residency.  Defendants admit Plaintiff was formerly incarcerated at Logan Correctional Center located at 1096 1350th Street in Lincoln, Illinois.

8.      Defendant Jason McAtee was, at all relevant times, a nurse at Logan employed by Wexford Health Sources, Inc. ("Wexford"), acting under color of law and within the scope of his employment. Defendant McAtee is sued in his individual capacity.

ANSWER:  Defendants lack sufficient knowledge to admit or deny what Plaintiff considers to be at all relevant times.  Defendants admit Jason McAtee is a former employee of Wexford Health Sources, Inc., and was formerly employed as a registered nurse at Logan Correctional Center. Defendants deny Jason McAtee is currently employed by Wexford Health Sources, Inc., at

Logan Correctional Center.  Defendants admits Plaintiff has sued Jason McAtee in his individual capacity, but deny Plaintiff is entitled to any relief whatsoever.

9. **Defendant Mary Schoen was, at all relevant times, a nurse at Logan employed by Wexford, acting under color of law and within the scope of her employment. Defendant Schoen is sued in her individual capacity.**

ANSWER:  Defendants lack sufficient knowledge to admit or deny what Plaintiff considers to be at all relevant times.  Defendants admit Mary Schoen is a former employee of Wexford Health Sources, Inc., and was formerly employed as a registered nurse at Logan Correctional Center.  Defendants deny Mary Schoen is currently employed by Wexford Health Sources, Inc., at Logan Correctional Center.  Defendants admits Plaintiff has sued Mary Schoen in her individual capacity, but deny Plaintiff is entitled to any relief whatsoever.

10. **Defendant Dina Eldridge was, at all relevant times, a nurse at Logan employed by Wexford, acting under color of law and within the scope of her employment. Defendant Eldridge is sued in her individual capacity.**

ANSWER:  Defendants lack sufficient knowledge to admit or deny what Plaintiff considers to be at all relevant times.  Defendants admit Dina Eldridge is a former employee of Wexford Health Sources, Inc., and was formerly employed as a licensed practical nurse at Logan Correctional Center.  Defendants deny Dina Eldridge is currently employed by Wexford Health Sources, Inc., at Logan Correctional Center.  Defendants admits Plaintiff has sued Dina Eldridge in her individual capacity, but deny Plaintiff is entitled to any relief whatsoever.

11.     Defendant Lisa Johnson was, at all relevant times, the health care unit administrator at Logan employed by IDOC, acting under color of law and within the scope of her employment. At all relevant times, Defendant Hickel was responsible for implementing, overseeing, and supervising policies and practices at Logan. Defendant Johnson is sued in her individual capacity.

ANSWER:  Defendants lack sufficient knowledge to admit or deny the allegations set forth in Paragraph 11.

12.     Defendant Alyssa Bauer was, at all relevant times, the director of nursing at Logan employed by Wexford, acting under color of law and within the scope of her employment. At all relevant times, Defendant Bauer was responsible for implementing, overseeing, and supervising policies and practices at Logan. Defendant Bauer is sued in her individual capacity.

ANSWER:  Defendants lack sufficient knowledge to admit or deny what Plaintiff considers to be at all relevant times.  Defendants admit Alyssa Bauer is a former employee of Wexford Health Sources, Inc., and was formerly employed as Director of Nursing at Logan Correctional Center. Defendants deny Alyssa Bauer is currently employed by Wexford Health Sources, Inc., at Logan Correctional Center.   Defendants admits Plaintiff has sued Alyssa Bauer in her individual capacity, but deny Plaintiff is entitled to any relief whatsoever.

13.     Defendant Wexford ("Wexford") is a corporation headquartered in Pennsylvania and doing business in Illinois. Wexford contracts with the State of Illinois to provide healthcare at Illinois Department of Corrections ("IDOC") prisons throughout the state. At all relevant times, Wexford was responsible for implementing, overseeing, and supervising the policies regarding medical care at Logan and IDOC generally. Wexford was, at all relevant times, acting under color of law by and through its lawful agents, including the individual defendants and other unknown healthcare employees at Logan.

ANSWER:  Defendants admit Wexford Health Sources, Inc., is a corporation headquartered in Pennsylvania and doing business in Illinois. Defendants admit Wexford contracts with the State of Illinois to provide healthcare at Illinois Department of Corrections prisons throughout the state, including at Logan Correctional Center.   Defendant Wexford denies the remaining allegations contained in Paragraph 13 as vague and an incomplete recitation of Wexford's responsibilities under its contract with the State.

## Facts

14.     Ms. McCaffrey entered IDOC custody on September 24, 2018.

ANSWER:  Defendants admit the allegations contained in Paragraph 14 of the Complaint.

15.     At the time, she was approximately 20 weeks pregnant with her daughter, Delilah. She was expected to deliver her daughter on February 16, 2019.

ANSWER:  Defendants admit generally Plaintiff was pregnant during her incarceration at Logan.  Defendants lack sufficient knowledge to admit or deny the specifics of Plaintiff's pregnancy absent review of full medical records which are not currently in Defendants' possession.

16.     On January 25, 2019—just three weeks shy of her estimated due date—Ms. McCaffrey went into labor.

ANSWER:  Defendants lack sufficient knowledge to admit or deny the specifics of Plaintiff's pregnancy absent review of full medical records which are not currently in Defendants' possession.

17.     Around 8 p.m., Ms. McCaffrey was watching television in the day room when her water broke. Ms. McCaffrey alerted a nearby correctional officer, and he called the health care unit. Ms. McCaffrey was brought by van from the housing unit to the health care unit.

ANSWER:  Defendants lack sufficient knowledge to admit or deny the allegations set forth in Paragraph 17.

18.     At the health care unit, Ms. McCaffrey spoke with Defendant Jason McAtee and another man, both nurses at Logan, as well as Defendant Mary Schoen.

ANSWER:  Defendants deny the allegations set forth in Paragraph 18.

19.     Ms. McCaffrey told Defendants that her labor had begun, she was bleeding and leaking amniotic fluid from her vagina, and she was feeling pressure in her abdomen and mild pain.

ANSWER:  Defendants deny the allegations set forth in Paragraph 19.

20.     With Defendant Schoen looking on, Defendant McAtee and the other male nurse visually examined Ms. McCaffrey, who was continuously leaking fluid and blood onto the examination table.

ANSWER:  Defendants admit while incarcerated at Logan, Plaintiff received medical treatment related to her pregnancy as identified in the medical records.  Defendants lack sufficient knowledge to admit or deny the specifics of said care absent review of full medical records which are not currently in Defendants' possession.

21.    Defendants falsely told Ms. McCaffrey that she was not in labor, and dismissed her complaints as anxiety and "ineffective coping."

ANSWER:  Defendants deny the allegations set forth in Paragraph 21.

22.    Defendants forced Ms. McCaffrey to return to the housing unit, where she went straight to her cell.

ANSWER:  Defendants deny the allegations set forth in Paragraph 22.

23.    Immediately after arriving at her cell, Ms. McCaffrey began to experience strong contractions accompanied by intense pain. Another woman at Logan timed Ms. McCaffrey's contractions as occurring two minutes apart.

ANSWER:  Defendants lack sufficient knowledge to admit or deny the allegations set forth in Paragraph 23.

24.    Ms. McCaffrey and other women in her housing unit who had gathered to come to her aid asked correctional staff to contact the health care unit again.

ANSWER:  Defendants lack sufficient knowledge to admit or deny the allegations set forth in Paragraph 24.

25.    A correctional officer called the health care unit and reported that Ms. McCaffrey knew she was having her baby, or words to that effect.

ANSWER:  Defendants deny receiving such a call.

26.     In response, Defendant McAtee went to Ms. McCaffrey's cell, where he observed her lying on the floor in agonizing labor pain with contractions in close succession.

ANSWER:  Defendants admit while incarcerated at Logan, Plaintiff received medical treatment related to her pregnancy as identified in the medical records.  Defendants lack sufficient knowledge to admit or deny the specifics of said care absent review of full medical records which are not currently in Defendants' possession.

27.     Ms. McCaffrey told Defendant McAtee that she felt she needed to defecate—a common symptom of readiness to deliver a baby—and was afraid she would give birth.

ANSWER:  Defendants admit while incarcerated at Logan, Plaintiff received medical treatment related to her pregnancy as identified in the medical records.  Defendants lack sufficient knowledge to admit or deny the specifics of said care absent review of full medical records which are not currently in Defendants' possession.

28.     Defendant McAtee told Ms. McCaffrey, falsely, that she was not in labor and he left her cell. He later completed a medical record reporting that Ms. McCaffrey was experiencing only "ineffective coping" at the time.

ANSWER:  Defendants admit while incarcerated at Logan, Plaintiff received medical treatment related to her pregnancy as identified in the medical records.  Defendants lack sufficient knowledge to admit or deny the specifics of said care absent review of full medical records which are not currently in Defendants' possession.

29.     With the help of other prisoners, Ms. McCaffrey walked past Defendant McAtee—who was chatting with correctional officers in the hallway of the housing unit—to the bathroom, and eventually to the shower room.

9

ANSWER:  Defendants lack sufficient knowledge to admit or deny the allegations set forth in Paragraph 29.

30.  Around 11:30 p.m., Ms. McCaffrey was seated on a chair in the shower room, crying out in pain, when she felt her baby emerging from her body.

ANSWER:  Defendants lack sufficient knowledge to admit or deny the allegations set forth in Paragraph 30.

31.  Ms. McCaffrey laid down on the shower room floor and delivered a baby girl weighing seven pounds two ounces. Ms. McCaffrey gave birth completely by herself with no medical personnel of any kind present and no epidural or other medication.

ANSWER:  Defendants deny the allegations set forth in Paragraph 31.

32.  There she lay holding her baby, still attached to her body by the umbilical cord, for approximately fifteen minutes until paramedics arrived, cut the cord, and transported Ms. McCaffrey and her daughter to the hospital.

ANSWER:  Defendants lack sufficient knowledge to admit or deny the specifics of Plaintiff's care following birth absent review of full medical records which are not currently in Defendants' possession.

33.  At the hospital, Ms. McCaffrey's daughter received medical care for the first time. Ms. McCaffrey required surgical repair of three vaginal lacerations.

ANSWER:  Defendants deny Plaintiff's daughter did not receive medical care until she arrived at the hospital.  Defendants lack sufficient knowledge to admit or deny the specifics of Plaintiff's

post-birth medical care absent review of the full medical records which are not currently in Defendants' possession.  Defendants deny the remaining allegations set forth in Paragraph 33.

34.    The following day, on information and belief, Defendant Eldridge signed a medical record falsely reporting that she came to Ms. McCaffrey's aid in the shower room while the baby's head was crowning, assisted with the delivery, and provided medical care to the baby immediately after the baby was born.

ANSWER:  Defendants deny the allegations set forth in Paragraph 34.

### Count I
### 42 U.S.C. § 1983 – Denial of Medical Care (Eighth Amendment)
### Against All Defendants

35.    Plaintiff incorporates each paragraph of this complaint as if fully restated here.

ANSWER:   Defendants having answered paragraphs 1-34, incorporate those answers by reference as if fully set forth herein.

36.    As described above, Defendants had notice of Plaintiff's medical needs and the seriousness of her medical needs, and they knew the risk of harm she faced if she did not receive appropriate medical care. Despite that knowledge, Defendants failed to provide Plaintiff with proper medical care or access to medical care, in violation of the Eighth Amendment to the United States Constitution.

ANSWER:  Defendants Wexford, Schoen, Eldridge, McAtee, and Bauer deny the allegations set forth in Paragraph 36.

37.    The misconduct described in this count was objectively unreasonable and was undertaken intentionally, with malice, and/or with reckless indifference to Plaintiff's rights.

ANSWER:  Defendants Wexford, Schoen, Eldridge, McAtee, and Bauer deny the allegations set forth in Paragraph 37.

38.    Alternatively, Defendants were deliberately indifferent to Plaintiff's objectively serious medical needs, and their actions were undertaken intentionally, with malice, and/or with reckless indifference to her rights.

ANSWER:  Defendants Wexford, Schoen, Eldridge, McAtee, and Bauer deny the allegations set forth in Paragraph 38.

39.    Plaintiff's injuries were proximately caused by Defendants' policies and practices.

ANSWER:  Defendants Wexford, Schoen, Eldridge, McAtee, and Bauer deny the allegations set forth in Paragraph 39.

40.    At all times relevant to the events at issue in this case, Defendant Wexford contracted with the State of Illinois to provide healthcare to women imprisoned at Logan, including Plaintiff. As the provider of healthcare services to prisoners at Logan and other IDOC facilities, Wexford was responsible for the creation, implementation, oversight, and supervision of policies, practices, and procedures regarding the provision of medical care to prisoners in IDOC custody.

ANSWER:  Defendant Wexford admits that it contracted with the IDOC to provided medical care to inmates housed in IDOC prisons, including at Logan Correctional Center.  Defendant Wexford denies the remaining allegations contained in Paragraph 40 as vague and an incomplete recitation of Wexford's responsibilities under its contract with the State.

41.     Before the events giving rise to Plaintiff's complaint, Defendant Wexford had notice of widespread policies and practices by healthcare and correctional employees at Logan pursuant to which prisoners like Plaintiff with serious medical needs were routinely denied medical care and access to medical care. It is common at Logan to see prisoners with clear symptoms of serious medical needs who repeatedly request medical evaluation or treatment, and whose requests are routinely delayed or completely ignored by healthcare and correctional employees.

ANSWER: Defendant Wexford denies the allegations contained in Paragraph 41 of the Complaint.

42.     The second court-appointed expert in *Lippert v. Godinez*, No. 10-cv-04603 evaluated Logan in late April 2018—shortly before Ms. McCaffrey's arrival—and concluded that the prison was "not providing adequate medical care to patients" and suffered from "systemic issues that present ongoing risk of harm to patients and result in preventable morbidity." The lengthy report noted that the Wexford supervisory nurse "is dedicated to business duties related to the Wexford contract instead of being responsive to her role as supervisory nurse." Likewise, the "HCUA has too many responsibilities," which when combined with the Wexford supervisor's split attention, rendered nurse supervision "ineffective" and "inadequate." The report observes that this ineffectiveness is "compounded by lack of collaboration between IDOC leadership and Wexford leadership at" Logan.

ANSWER:  Defendant Wexford denies the accuracy of the quoted portion of the expert report from *Lippert v. Godinez,* No. 10-cv-04603.

43.    In particular, the *Lippert* report documented the failure at Logan to appropriately train and supervise nurses. The experts found that nurses "independently managed patients with urgent medical symptoms and did not notify a medical provider, increasing risk of harm to patients. LPNs exceed their scope of practice by performing independent nursing assessments." The *Lippert* report specifically noted the absence of an OB-GYN provider at Logan and emphasized the need for on-site providers to be trained to provide prenatal care.

ANSWER:  Defendant Wexford denies the accuracy of the quoted portion of the expert report from *Lippert v. Godinez,* No. 10-cv-04603.

44.     Consistent with the *Lippert* report's findings, there exist widespread policies or practices at Logan pursuant to which prisoners receive unconstitutionally inadequate healthcare, including policies and practices pursuant to which: (1) healthcare personnel commonly fail to respond or respond inadequately to prisoners who have requested medical attention or medication, or asked to see a doctor; (2) healthcare personnel commonly fail to respond or respond inadequately to prisoners who exhibit obvious signs of a serious medical condition; (3) healthcare personnel commonly fail to perform adequate examinations of prisoners with a serious medical condition; (4) healthcare personnel commonly fail to review a prisoner's pertinent medical records before, during, or after an examination or diagnosis of the prisoner; (5) healthcare personnel with inadequate training, qualifications, and experience are responsible for screening and evaluating prisoner complaints and requests for medical care; (6) healthcare personnel fail to provide timely healthcare to prisoners; (7) healthcare personnel fail to respond adequately or timely to diagnostic testing that reveals a serious medical need; (8) healthcare personnel fail or refuse to arrange for prisoners to be treated in outside facilities, even when an outside referral is necessary or proper; and (9) inadequate levels of health care staffing are maintained.

ANSWER:  Defendant Wexford denies the allegations contained in Paragraph 44 of the Complaint.

45.     Despite knowledge of these problematic policies and practices, Defendant Wexford did nothing to ensure prisoners at Logan received adequate medical care and access to medical care, thereby acting with deliberate indifference.

ANSWER:  Defendant Wexford denies the allegations contained in Paragraph 45 of the Complaint.

46.     These widespread policies and practices were allowed to flourish because Defendant Wexford, which directs the provision of healthcare services at Logan, directly encouraged the very type of misconduct at issue in this case, failed to provide adequate training and supervision of healthcare and correctional employees, and failed to adequately punish and discipline prior instances of similar misconduct. In this way, Defendant Wexford violated Plaintiff's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

ANSWER:  Defendant Wexford denies the allegations contained in Paragraph 46 of the Complaint.

47.     The above-described widespread policies and practices, so well settled as to constitute de facto policy at Logan, were able to exist and thrive because Defendant Wexford was deliberately indifferent to the problem, thereby effectively ratifying it.

ANSWER:  Defendant Wexford denies the allegations contained in Paragraph 47 of the Complaint.

48.     At all times relevant to their involvement in this case, Defendants Johnson and Bauer were responsible for the creation, implementation, oversight, and supervision of policies, practices, and procedures regarding medical care at Logan; the training of IDOC and Wexford staff at Logan on providing medical care to prisoners, and providing prisoners access to medical care; and the supervision of IDOC and Wexford staff at Logan who provided medical care and were responsible for providing prisoners access to medical care.

ANSWER:  Defendant Bauer denies the allegations set forth in Paragraph 48.

49.     Before the events giving rise to Plaintiff's complaint, Defendants Johnson and Bauer had notice of widespread policies and practices by healthcare and correctional employees at Logan pursuant to which prisoners like Plaintiff with serious medical needs were routinely denied medical care and access to medical care. It is common at Logan to see prisoners with clear symptoms of serious medical needs who repeatedly request medical evaluation or treatment, and whose requests are routinely delayed or completely ignored by healthcare and correctional employees.

ANSWER:  Defendant Bauer denies the allegations set forth in Paragraph 49.

50.     The second court-appointed expert in *Lippert v. Godinez*, No. 10-cv-04603 evaluated Logan in late April 2018—shortly before Ms. McCaffrey's arrival—and concluded that the prison was "not providing adequate medical care to patients" and suffered from "systemic issues that present ongoing risk of harm to patients and result in preventable morbidity." The lengthy report noted that the Wexford supervisory nurse "is dedicated to business duties related to the Wexford contract instead of being responsive to her role as supervisory nurse." Likewise, the "HCUA has too many responsibilities," which when combined with the Wexford supervisor's split attention, rendered nurse supervision "ineffective" and "inadequate." The report observes that this ineffectiveness is "compounded by lack of collaboration between IDOC leadership and Wexford leadership at" Logan.

ANSWER:  Defendant Bauer denies the allegations set forth in Paragraph 50.

51.    In particular, the *Lippert* report documented the failure at Logan to appropriately train and supervise nurses. The experts found that nurses "independently managed patients with urgent medical symptoms and did not notify a medical provider, increasing risk of harm to patients. LPNs exceed their scope of practice by performing independent nursing assessments." The *Lippert* report specifically noted the absence of an OB-GYN provider at Logan and emphasized the need for on-site providers to be trained to provide prenatal care.

ANSWER:  Defendant Bauer denies the allegations set forth in Paragraph 51.

52.    Consistent with the *Lippert* report's findings, there exist widespread policies or practices at Logan pursuant to which prisoners receive unconstitutionally inadequate healthcare, including policies and practices pursuant to which: (1) nursing staff commonly fail to respond or respond inadequately to prisoners who have requested medical attention or medication, or asked to see a doctor; (2) nursing staff commonly fail to respond or respond inadequately to prisoners who exhibit obvious signs of a serious medical condition; (3) nursing staff who have inadequate training, qualifications, and experience are responsible for screening and evaluating prisoner complaints and requests for medical care; and (6) nursing staff fail to provide timely healthcare to prisoners, including timely communication to ensure prisoners received needed treatment in outside facilities.

ANSWER:  Defendant Bauer denies the allegations set forth in Paragraph 52.

53.    Despite knowledge of these problematic policies and practices, Defendants Johnson and Bauer did nothing to ensure prisoners at Logan received adequate medical care and access to medical care, thereby acting with deliberate indifference.

ANSWER:  Defendant Bauer denies the allegations set forth in Paragraph 53.

54.     These widespread policies and practices were allowed to flourish because Defendants Johnson and Bauer who directed the provision of healthcare services at Logan, directly encouraged the very type of misconduct at issue in this case, failed to provide adequate training and supervision of healthcare and correctional employees, and failed to adequately punish and discipline prior instances of similar misconduct. In this way, Defendants Johnson and Bauer violated Plaintiff's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

ANSWER:  Defendant Bauer denies the allegations set forth in Paragraph 54.

55.     The above-described widespread policies and practices, so well settled as to constitute de facto policy at Logan, were able to exist and thrive because Defendants Johnson and Bauer were deliberately indifferent to the problem, thereby effectively ratifying it.

ANSWER:  Defendant Bauer denies the allegations set forth in Paragraph 55.

56.     Plaintiff's injuries were caused by employees of IDOC and Wexford, including but not limited to the individually named Defendants, who acted pursuant to the foregoing policies and practices in engaging in the misconduct described in this count

ANSWER:  Defendants Wexford, Schoen, Eldridge, McAtee, and Bauer deny the allegations set forth in Paragraph 56.

### Count II
### 42 U.S.C. § 1983 – Failure to Intervene (Eighth Amendment)
### Against All Defendants

57.     Plaintiff incorporates each paragraph of this complaint as if fully restated here.

ANSWER:  Defendants having answered paragraphs 1-56, incorporate those answers by reference as if fully set forth herein.

58.    As described above, Defendants had a reasonable opportunity to prevent the violation of Plaintiff's constitutional rights set forth above had they been so inclined; but they failed to do so.

ANSWER:  Defendants Schoen, Eldridge, McAtee, and Bauer deny the allegations set forth in Paragraph 58.  Count II against Wexford was dismissed September 7, 2021.  See Doc. 42.

59.    Defendants' failure to act was intentional, done with malice, and/or done with reckless indifference to Plaintiff's rights.

ANSWER:  Defendants Schoen, Eldridge, McAtee, and Bauer deny the allegations set forth in Paragraph 59.  Count II against Wexford was dismissed September 7, 2021.  See Doc. 42.

60.    As a direct and proximate result of Defendants' misconduct, Plaintiff's rights were violated and she suffered injuries, including pain, suffering, and emotional distress.

ANSWER:  Defendants Schoen, Eldridge, McAtee, and Bauer deny the allegations set forth in Paragraph 60.  Count II against Wexford was dismissed September 7, 2021.  See Doc. 42.

61.    Defendants' injuries were caused by IDOC and Wexford employees, including the individually named Defendants who acted pursuant to the policies and practices described more fully above.

ANSWER:  Defendants Schoen, Eldridge, McAtee, and Bauer deny the allegations set forth in Paragraph 61.  Count II against Wexford was dismissed September 7, 2021.  See Doc. 42.

## Count III
### 42 U.S.C. § 1983 – Conspiracy
### Against All Defendants

62.     Plaintiff incorporates each paragraph of this complaint as if fully restated here.

ANSWER:  Count III against Defendants was dismissed September 7, 2021.  See Doc. 42.

63.     Defendants reached an agreement among themselves to deprive Plaintiff of her constitutional rights and to protect one another from liability for depriving Plaintiff of her rights, all as described in the various paragraphs of this complaint.

ANSWER:  Count III against Defendants was dismissed September 7, 2021.  See Doc. 42.

64.     In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

ANSWER:  Count III against Defendants was dismissed September 7, 2021.  See Doc. 42.

65.     The misconduct described in this count was undertaken intentionally, with malice, and/or with reckless indifference to Plaintiff's rights.

ANSWER:  Count III against Defendants was dismissed September 7, 2021.  See Doc. 42.

66.     As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff's rights were violated and she suffered injuries, including pain, suffering, and emotional distress.

ANSWER:  Count III against Defendants was dismissed September 7, 2021.  See Doc. 42.

67.     Plaintiff's injuries were caused by employees of IDOC and Wexford, including but not limited to the individually named Defendants, who acted pursuant to the policies and practices described more fully above.

ANSWER:  Count III against Defendants was dismissed September 7, 2021.  See Doc. 42.

### Count IV
### Intentional Infliction of Emotional Distress
### Against Defendants McAtee and Schoen

68.    Plaintiff incorporates each paragraph of this complaint as if fully restated here.

ANSWER:  Defendants having answered paragraphs 1-67, incorporate those answers by reference as if fully set forth herein

69.    As described above, by denying Plaintiff medical evaluation and treatment, or access to medical evaluation or treatment, Defendants McAtee and Schoen engaged in extreme and outrageous conduct.

ANSWER:   Defendants McAtee and Schoen deny the allegations set forth in Paragraph 69.

70.    Defendants' actions set forth above were rooted in an abuse of power or authority.

ANSWER:  Defendants McAtee and Schoen deny the allegations set forth in Paragraph 70.

71.    Defendants' actions set forth above were undertaken with intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress or with reckless disregard of that probability.

ANSWER:  Defendants McAtee and Schoen deny the allegations set forth in Paragraph 71.

72.    Defendants' actions set forth above were undertaken with malice, willfulness, and/or with reckless indifference to Plaintiff's rights.

ANSWER:  Defendants McAtee and Schoen deny the allegations set forth in Paragraph 72.

73.    As a direct and proximate result of this misconduct, Plaintiff suffered physical and emotional injuries, including severe emotional distress.

ANSWER:  Defendants McAtee and Schoen deny the allegations set forth in Paragraph 73.

**Count V**
**Negligent or Willful and Wanton Conduct**
**Against Defendants McAtee, Schoen, Eldridge, and Wexford**

74.    Plaintiff incorporates each paragraph of this complaint as if fully restated here.

ANSWER:  Defendants having answered paragraphs 1-73, incorporate those answers by reference as if fully set forth herein

75.    In the manner described above, Defendants McAtee, Schoen, Eldridge, and Wexford breached the duty of care owed to prisoners in their care. They did so by negligently ignoring Plaintiff's requests for medical attention.

ANSWER:  Defendants McAtee, Schoen, Eldridge, and Wexford Health Sources, Inc., deny the allegations set forth in Paragraph 75.

76.    Alternatively, Defendants' actions were willful and wanton in that they demonstrated an utter indifference to the safety of others. Defendants were aware that an injury would probably result from the above-described course of action and recklessly disregarded the consequences of those actions.

ANSWER:  Defendants McAtee, Schoen, Eldridge, and Wexford Health Sources, Inc., deny the allegations set forth in Paragraph 76.

77.    Defendants' actions were undertaken willfully and wantonly, and/or with reckless indifference or conscious disregard for Plaintiff's health and safety.

ANSWER:  Defendants McAtee, Schoen, Eldridge, and Wexford Health Sources, Inc., deny the allegations set forth in Paragraph 77.

78.     As a direct and proximate result of Defendants' negligence and/or willful and wanton conduct, Plaintiff suffered injuries, including pain, suffering, and emotional distress.

ANSWER:  Defendants McAtee, Schoen, Eldridge, and Wexford Health Sources, Inc., deny the allegations set forth in Paragraph 78.

## Count VI
### Respondeat Superior
### Against Defendant Wexford

79.     Plaintiff incorporates each paragraph of this complaint as if fully restated here.

ANSWER:  Defendants having answered paragraphs 1-78, incorporate those answers by reference as if fully set forth herein

80.     In committing the acts alleged in the preceding paragraphs, Defendants McAtee. Schoen, and Eldridge were employees, members, and agents of Wexford, acting at all relevant times within the scope of their employment.

ANSWER:  Defendant Wexford admits Defendants McAtee, Schoen, and Eldridge were employees of Wexford and acting within the scope of employment at all relevant times. Defendant denies the remaining allegations contained in Paragraph 80.

81.     Consequently, Defendant Wexford is liable for the actions of its employees acting within the scope of their employment under state law.

ANSWER:  Defendant Wexford admits it is responsible for acts of employees taken within the scope of their employment in accordance with Illinois law on agency/vicarious liability.

82.     Defendant Wexford, as a private corporation acting under color of state law, should additionally be held liable under 42 U.S.C. § 1983 for the conduct of its employees acting within the scope of their employment. *See Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 793–95 (7th Cir. 2014).[1]

ANSWER:  Count VI insofar as it alleges vicarious liability under 42 U.S.C. §1983 was dismissed September 7, 2021.  See Doc. 42.

**DEFENDANTS DEMAND TRIAL BY JURY**

### AFFIRMATIVE DEFENSES

1.     At all times relevant herein, Defendants McAtee, Schoen, Eldridge, and Bauer acted in good faith in the performance of their official duties and without violating Plaintiff's clearly established statutory or constitutional rights of which a reasonable person would have known. Defendants are therefore protected from suit by the doctrine of qualified immunity.[1]

2.     At all times relevant herein, Defendants acted in good faith and in conformity with existing precedent.  They are therefore entitled to good faith immunity from damages. *Janus v. Am. Fed'n. of State*, 942 F.3d 352 (7th Cir. 2019).

**DEFENDANTS DEMAND TRIAL BY JURY AS TO THEIR AFFIRMATIVE DEFENSES**

WHEREFORE, for the above reasons, Defendants respectfully request this Honorable Court deny Plaintiff any relief in this matter and grant Defendants judgment as to all matters and any other relief deemed appropriate, including cost of suit.

Respectfully submitted,

---

[1] Defendants acknowledge in *Estate of Clark v. Walker*, 865 F.3d 544, 550-51 (7th Cir. 2017), the Seventh Circuit rejected qualified immunity for contractual government employees.  Defendants assert this defense to preserve it for appeal.

CASSIDAY SCHADE LLP

By:  /s/ Alexandra N. Rice
      Attorneys for Defendant, WEXFORD
      HEALTH SOURCES, INC., MARY
      SCHOEN, DINA ELDRIDGE, JASON
      MCATEE, and ALYSSA BAUER

Alexandra N. Rice
ARDC No. 6312420
CASSIDAY SCHADE LLP
3100 Montvale Drive
Springfield, IL 62704
(217) 572-1714
(217) 572-1613 (Fax)
arice@cassiday.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 21, 2021, I electronically filed the foregoing Answer to Plaintiff's Complaint with Affirmative Defenses with the Clerk of the Court using the CM/ECF system.  The electronic case filing system sent a "Notice of E-Filing" to the following:

Stephen H. Weil, Esq.
Sarah C. Grady, Esq.
Loevy & Loevy
311 N. Aberdeen Street, 3rd Floor
Chicago, IL 60607

James B. Goldberg
200 S. Wacker Drive, Suite 3100
Chicago, Illinois 60606

Megan Ditzler
Assistant Attorney General
500 South Second Street
Springfield, IL 62701

Under penalties as provided by law pursuant to 735 ILCS 5/1-109, I certify that the statements set forth herein are true and correct:

/s/ Alexandra N. Rice

9802653 ARICE;SPRESSLE